UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE
AT KNOXVILLE

| | |
|---|---|
| DEBORAH KAY ROBERTS and LOWELL WAYNE ROBERTS,  )<br> )<br>*Plaintiffs*,  )<br> )<br>v.  )<br> )<br>BOYD SPORTS, LLC,  )<br> )<br>*Defendant*.  ) | Case No. 3:23-cv-137<br><br>Judge Atchley<br><br>Magistrate Judge McCook |

# MEMORANDUM OPINION AND ORDER

Before the Court is Defendant Boyd Sports, LLC's ("Boyd Sports") Motion to Compel Arbitration and Dismiss First Amended Complaint. [Doc. 14]. For the reasons explained below, Defendant's Motion will be **GRANTED** and this case will be **DISMISSED**.

## I. FACTUAL BACKGROUND

Plaintiff Deborah Roberts ordered by telephone tickets to attend an April 20, 2022, Tennessee Smokies baseball game and picked them up at Will Call on the night of the game. [Doc. 17 at 2]. She entered the stadium and sat in front row seats near the third base dugout. [*Id.* at 7]. During the game, Mrs. Roberts was struck on the head by a foul ball, resulting in several facial injuries that required a three-day hospital stay before returning home to Ohio for further treatment. [*Id.*]. The day after the injury, Plaintiff Lowell Wayne Roberts met with Smokies personnel at Smokies Stadium to discuss the incident. [*Id.* at 8]. Plaintiffs represent that despite maintaining possession of at least one ticket stub throughout all relevant time periods, they did not become aware of the arbitration agreement or summary until Defendant filed the instant motion. [*Id.*].

The front of the tickets includes information about the event and plaintiffs' seats transposed on top of an image of a baseball player, while the back contains 30 lines of terms and conditions

in a size 4 font. [*Id.* 2-5]. Relevant here, the following capitalized and underlined terms appear as the fifth line of text on the back of the ticket: "THIS TICKET IS A REVOCABLE LICENSE…" [Doc. 15-2 and 17 at 4]. Just below that reads "By using this ticket, holder,…agrees to the terms and conditions, including an **AGREEMENT TO ARBITRATE/CLASS ACTION WAIVER**, at https://www.milb.com/tennessee/tickets/ticketback... and the Agreement summary below…" [*Id.*]. Starting five lines from the bottom of the ticket is the following capitalized passage: "ANY CLAIM RELATED TO THIS TICKET SHALL BE SETTLED BY MANDATORY, CONFIDENTIAL, FINAL, BINDING ARBITRATION." [*Id.*]. The full terms and conditions available at the website provided on the back of the ticket contain the following opt-out provision: "YOU HAVE THE RIGHT TO REJECT THIS ARBITRATION AGREEMENT, BUT YOU MUST EXERCISE THIS RIGHT PROMPTLY…within seven (7) days after the date of the Event." [Doc. 17 at 5]. Having reviewed the briefing, declarations, and documentation surrounding the instant Motion, the Court is prepared to rule.

## II. LAW

The Federal Arbitration Act ("FAA") enables contracting parties to agree to settle certain contractual disputes with an arbitrator rather than a court. See 9 U.S.C. § 2. The FAA provides in pertinent part:

> A written provision in ... a contract evidencing a transaction involving commerce to settle by arbitration a controversy thereafter arising out of such contract or transaction, or the refusal to perform the whole or any part thereof, or an agreement in writing to submit to arbitration an existing controversy arising out of such a contract, transaction, or refusal, shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract.

9 U.S.C. § 2; *AT&T Mobility LLC v. Concepcion*, 563 U.S. 333, 339 (2011) (quoting *Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 24 (1983)). The principal purpose of the FAA, as the Supreme Court recently emphasized in *Morgan*, is to ensure that private arbitration

2
Case 3:23-cv-00137-CEA-JEM   Document 31   Filed 01/23/24   Page 2 of 11   PageID #: 335

agreements are enforced according to their terms, just as with any other contract. *Morgan v. Sundance*, 142 S.Ct. 1708 (2022) (noting that the FAA's policy "is about treating arbitration contracts like all others").

The standard of review for a motion to compel arbitration mirrors that required for a motion for summary judgment. *Great Earth Companies, Inc. v. Simons,* 288 F.3d 878, 889 (6th Cir. 2002). If the validity of the arbitration agreement is "in issue," the parties must proceed to trial to resolve their dispute. *Stout v. J.D. Byrider*, 228 F.3d 709, 714 (6th Cir. 2000). In deciding a motion to compel arbitration, the court views "all facts and inferences drawn therefrom in the light most favorable" to the party opposing arbitration. *Id*.

In the absence of a delegation clause,[1] a court asked to compel arbitration under the FAA has four tasks: (1) determine whether the parties agreed to arbitrate; (2) determine the scope of the arbitration agreement; (3) if federal statutory claims are asserted, determine whether Congress intended those claims to be nonarbitrable; and (4) if some, but not all claims are subject to arbitration, determine whether to dismiss or stay the remaining proceedings. *Stout v. J.D. Byrider*, 228 F.3d 709, 714 (6th Cir. 2000) (citing *Compuserve, Inc. v. Vigny Int'l Fin., Ltd.*, 760 F. Supp. 1273, 1278 (S.D. Ohio 1990)).

### III. ANALYSIS

Here, no federal claims have been asserted, removing the need to analyze the third *Stout* factor. *See Sevier Cnty. Schs. Fed. Credit Union v. Branch Banking & Tr. Co.*, 2022 WL 19403610, at *4 (E.D. Tenn. Sept. 15, 2022). The parties do not dispute the scope of the agreement, if valid, and the plain language of the terms states that the agreement covers any related claim. Accordingly,

---

[1] Here, the arbitration agreement in question specifically provides that claims pertaining to the "validity, scope or enforceability of this Arbitration Agreement" are not themselves subject to arbitration. [Doc. 15-3 at 5]. Accordingly, the question of arbitrability is for the Court rather than the arbitrator.

the second *Stout* factor is not in question and no claims lie outside the scope of the agreement. Because all of Plaintiffs' claims are subject to binding arbitration, the case will be dismissed rather than stayed pending resolution by the arbitrator. The only remaining question is whether the parties agreed to arbitrate. The Court will now address this issue.

**Did the parties agree to arbitrate?**

The parties agree that Tennessee state law governs contract formation, and thus the existence of a valid arbitration agreement in this matter. [Doc. 15 at 9 and Doc. 17 at 9]. Their disagreement lies in whether the parties' actions on April 20, 2022, constituted mutual assent to be bound, and ultimately whether the arbitration clause summarized on the ticket back was valid. Defendant asserts the arbitration agreement is valid while Plaintiffs contend that it is invalid due to lack of mutual assent. In the alternative, Plaintiffs attempt to show that the agreement is unenforceable as procedurally and substantively unconscionable.

In Tennessee, a contract "'[1] must result from a meeting of the minds of the parties in mutual assent to the terms, [2] must be based upon a sufficient consideration, [3] free from fraud or undue influence, [4] not against public policy[,] and [5] sufficiently definite to be enforced.'" *Staubach Retail Servs.-Se., LLC v. H.G. Hill Realty Co.*, 160 S.W.3d 521, 524 (Tenn. 2005) (quoting *Doe v. HCA Health Servs. Of Tenn., Inc.*, 46 S.W.3d 191, 196 (Tenn. 2001)). Further, "the party opposing arbitration bears the burden of showing a genuine issue of material fact as to the validity of the agreement to arbitrate." *Anderson v. Amazon.com, Inc.*, 478 F. Supp. 3d 683, 691 (M.D. Tenn. 2020). Upon review of the briefing, the only factor in dispute is whether there was mutual assent to the terms. There is some confusion as to whether Plaintiffs contest the agreement being against public policy due to unconscionability or if that is intended as a standalone contract defense. As the Court explains below, the agreement is not unconscionable, thus it matters

not which position Plaintiffs wish to stand upon. Regardless, the Court's analysis is focused on the question of mutual assent and the question of unconscionability.

### Mutual Assent

The mutual assent determination requires that "courts must apply an objective standard based upon the parties' manifestations." *Staubach Retail Servs-Se., LLC*, 160 S.W.3d at 524. Defendant argues that the Plaintiffs demonstrated their assent to the agreement by presenting the tickets at the stadium and entering the baseball game. [Doc. 15 at 10]. They argue that contract formation in this sort of case is comparable to analysis of internet "browsewrap" agreements. [Doc. 15 at 13]. In "browsewrap" situations, contract formation "do[es] not require any affirmative action on the part of the user," rather, validity turns on whether "the user had actual or constructive notice of the website's terms and conditions."[2] *Anderson*, 490 F. Supp. 3d at 1274. If no evidence of actual knowledge exists in "browsewrap" disputes, the validity of such agreements depends on whether the website provided reasonable notice. *Id*. Here, Defendant asserts that under similar logic, 1) they provide reasonable notice of the arbitration agreement, 2) Plaintiffs had at least constructive notice of the arbitration agreement, and 3) Plaintiffs assented to the terms by entering the stadium.[3] [Doc. 15 at 14].

Plaintiffs assert that the appropriate test is whether a reasonable onlooker would conclude that the parties assented to the terms of the contract. *Moody Realty Co., Inc. v. Huestis*, 237 S.W.3d 666, 674 (Tenn. Ct. App. 2007). [Doc. 17 at 9]. Plaintiffs begin their argument by citing Tennessee cases where courts found a lack of assent to arbitration agreements by consumers who were not

---

[2] "Browsewrap" scenarios differ from "clickwrap" in that they do not require a user to click through an acknowledgement of terms. They merely provide notice that an agreement exists and is linked somewhere on the website being browsed. *See Anderson v. Amazon.com, Inc.*, 490 F. Supp. 3d 1265, 1274 (M.D. Tenn. 2020).
[3] While not disputed, Defendant provides caselaw that unilateral contract formation is recognized as valid in Tennessee where a party indicates acceptance of the terms by their actions. *See Seawright v. Am. Gen. Fin. Servs., Inc.*, 507 F.3d 967 (6th Cir. 2007).

presented with notice of terms or even the existence of such agreements. [Doc. 17 at 9-10]. The Court finds this line of argumentation unpersuasive, as the situation here is easily distinguishable – the undisputed record shows that even if Plaintiffs did not actually read the terms on the back of their tickets, they were presented with notice of the terms before entering the stadium and retained at least one ticket at all times relevant through the commencement of this suit.

Plaintiffs next argue that courts generally find a lack of assent absent "reasonable notice" of the contractual terms, citing mainly to steamship and common carrier cases. [Doc. 17 at 10-12]. They assert that many federal circuits have adopted a two-part reasonable notice test. [*Id*. at 11]. Plaintiffs argue that the first part of the test focuses on whether the physical characteristics of the ticket reasonably communicate the existence of the terms. *See Wallis v. Princess Cruises, Inc.*, 306 F.3d 827 (9th Cir. 2002). On this point, Plaintiffs offer *Barabachym v. Costa Line, Inc.* among other substantive maritime law cases which they claim stands for the proposition that a ticket holder cannot be bound by the terms on the back of a ticket unless the ticket face contains conspicuous language directing them to the contractual terms on the reverse. *Barabachym v. Costa Line, Inc.*, 713 F.2d 216, 219 (6th Cir. 1983) (holding that a cruise ship ticket failed to reasonably notify passengers of a one-year limitation-to-sue provision because the face of the ticket didn't notify the holders of the additional restrictions). [Doc. 17 at 10-11].

Plaintiffs argue that the second prong of the reasonable notice test considers whether the factors surrounding the purchase and retention of the ticket allowed the holders to become meaningfully informed of the contract terms. [Doc. 17 at 11]. It is Plaintiffs' position that their acceptance, usage, and receipt of the tickets in the underlying matter fail to satisfy either prong of this test. First, they argue that nothing about the physical characteristics of the ticket reasonably communicated to them the existence of the terms. [Doc. 17 at 13]. Second, they assert that nothing

6

in the events of April 20, 2022, or the following days permitted them to become meaningfully informed of the contract terms that the ticket subjected them to. [Doc. 17 at 13-14].

Plaintiffs' arguments are unpersuasive. First, as Defendant correctly notes, the cases relied upon by Plaintiffs for the proposition that federal courts have adopted a two-part reasonable notice test for assent are federal substantive maritime law cases, both overstating the applicability and importance of their precedential value and not reflecting Tennessee state law on contract formation, which is controlling here. [Doc. 22 at 14-17]. Second, even if federal substantive maritime law were controlling, the facts here do not support Plaintiffs' assertions.[4]

In summary, Defendant correctly identifies that under the FAA, "state contract law dictates whether an arbitration clause is valid." *Sevier Cnty. Schs. Fed. Credit Union*, 2022 WL 19403610, at *6. Despite arguing for a modified reasonable notice test from substantive maritime law, Plaintiffs do not dispute that Tennessee law applies in this instance. [Doc. 17]. Ultimately, the Court finds that a reasonable onlooker or objective observer would conclude that the parties mutually intended to assent to the terms on the tickets by Plaintiffs' acceptance of the tickets and subsequent entry into the stadium. Plaintiffs were provided with ample opportunity to read, investigate, and understand the provisions on their tickets, both when received, and certainly in the 7 days afterward when they were investigating their options to resolve the injury that occurred. According to the undisputed facts here, they never inquired as to the terms or indicated confusion or lack of understanding. Simply failing to read the terms does not present a party with the ability plead ignorance to or reject the terms after the fact. *Moody Realty Co.*, 237 S.W.3d at 676. As a

---

[4] It is undisputed that the ticket back states that "any claim related to this ticket shall be settled by…arbitration." It is also undisputed that the ticket back contains the web address of the full agreement, and that Plaintiffs maintained at least one of the tickets for all relevant time periods. Accordingly, the Court finds Plaintiffs' arguments that "the ticket…omitted any indication that the actual agreement was …comprehensive" unconvincing. Additionally, given the information on the ticket, Plaintiffs *were* able to become meaningfully informed of the contract terms. They cannot claim an inability to become informed of the contract terms simply because they decided not to investigate the ticket in their possession.

matter of law, the Court finds that Plaintiffs had constructive notice of the terms. Plaintiffs, as the party opposing arbitration, have not carried their burden of demonstrating that a genuine issue of fact exists with respect to mutuality of assent, thus, their challenge to mutual assent must fail. *Anderson*, 478 F. Supp. 3d at 691.

**Unconscionability**

Having established that the parties entered into a valid arbitration agreement, the Court takes up Plaintiffs' assertion that the agreement is invalidated on the grounds of both procedural and substantive unconscionability. Plaintiffs contend that the arbitration agreement is procedurally unconscionable because 1) this case does not involve a traditional contract formation method,[5] 2) Plaintiffs were not provided with a realistic opportunity to read or understand the arbitration agreement, and 3) the Smokies hid important terms in a "maze of fine print." [Doc. 17 at 16-17].

Defendant rightly points out that Plaintiffs were provided access to and notice of the arbitration agreement on the back of the ticket that they retained. Further, it is well established that a written arbitration agreement need not be signed to be enforceable. *Seawright v. Am. Gen. Fin. Servs., Inc.*, 507 F.3d 967, 978 (6th Cir. 2007) ("Unlike contracts that fall under the Statute of Frauds, arbitration agreements under the FAA need to be written, but not necessarily signed."). In addition, Defendant maintains, and the Court agrees, that consumers generally do understand that tickets come with terms and conditions, manifesting in this case as an arbitration agreement. *Shipwash v. United Airlines, Inc.*, 28 F. Supp. 3d 740, 756 (E.D. Tenn. 2014) (holding that an adhesive contract was not unconscionable where the passenger's ticket included a notice of the contract). In response to Plaintiffs' contention that there was no realistic opportunity to read or

---

[5] Plaintiffs support this assertion by stating that "[p]laintiffs did not sign any contract and they were not even provided the full terms of the arbitration agreement" and "the act of using a ticket to enter a stadium would not cause a reasonable consumer to realize that she was agreeing to a contract." [Doc. 17 at 16]

understand the agreement and that important terms were hidden in a maze of fine print, Defendant points out that the ticket reads in bold and all caps "**AGREEMENT TO ARBITRATE**" near the top of the ticket back immediately followed by the link to the full agreement. The Court fails to see how these facts demonstrate anything other than an ability to read and understand the agreement should an interested party simply look at the ticket.

Plaintiffs additionally contend that the arbitration agreement is substantively unconscionable in that it provided too short of an opt-out period, and that they were not provided with an account number required to opt-out. Generally, courts analyzing substantive unconscionability of arbitration agreements under Tennessee law focus on mutuality. *Seawright*, 507 F.3d at 977 ("[T]his court could not hold [] that the arbitration agreement was substantively unconscionable. The underlying arbitration is equitable in that it binds both…and does not 'limit the obligations and liability of the stronger party'…this distinguishes [this agreement] from the arbitration agreements that Tennessee courts have held unconscionable."). Defendant contends, and the Court agrees, that because the arbitration agreement equally binds both Plaintiffs and Defendant, a lack of mutuality cannot be shown.[6]

With regard to the opt-out period, Plaintiffs note that no Tennessee court has analyzed the unconscionability of an arbitration agreement printed on a baseball ticket, and they provide only a single case from the Illinois Court of Appeals for their proposition that seven (7) days is such a short opt-out period as to be substantively unconscionable. *Zuniga v. Major League Baseball*, 196 N.E.3d 12, (Ill. App. Ct. 2021). Given the uncontested facts of this case and the lack of any

---

[6] While ignored in Plaintiffs' briefing, the Court also notes that the arbitration agreement provides for Defendant to bear essentially all of the costs of arbitration. "The MLB entities will be responsible for paying all arbitration fees other than the amount of filing fees Holder would have incurred in the state or federal court where the Event took place, whichever is less." [Doc. 15-3 at 5-6]. Such a provision weighs against a finding of substantive unconscionability.

Tennessee case precedent, the Court declines to follow the Illinois Court of Appeals.

While there is no controlling precedent requiring an opt-out provision, Defendant provides a 7-day period. Despite Plaintiff Deborah Roberts hospitalization and subsequent potential difficulty reading fine print, Plaintiff Lowell Roberts has not asserted any such inability. Further, Plaintiffs maintained at least one ticket bearing the terms during all relevant time periods, and Plaintiff Lowell Roberts even visited the Smokies Stadium the next day to discuss the incident. Surely Plaintiffs had the opportunity while investigating their options to look at the back of their ticket and inquire further. The lack of basic investigation on the part of Plaintiffs cannot support a finding of substantive unconscionability.

The Court views Plaintiffs' contentions about the lack of an account number similarly. Plaintiffs claim to have been completely unaware of the existence of an arbitration agreement prior to the filing of this action, lending very little support to the notion that Plaintiffs were unable to opt-out due to the lack of an account number. In any event, Defendant's sworn affidavit [Doc. 22-1] confirms that Defendant would have honored the request to opt-out as long as Plaintiffs reasonably identified themselves, which would have been trivial given Plaintiff Lowell Roberts' follow up stadium visit.

Plaintiffs have not demonstrated grounds for finding this arbitration agreement procedurally or substantively unconscionable. Accordingly, their attempt to invalidate the agreement with an unconscionability defense must fail.

IV. **CONCLUSION**

In summary, the Court finds that the parties entered into a valid arbitration agreement that covers all claims raised in this matter. Further, Plaintiffs have not successfully produced a defense to invalidate the agreement. Accordingly, Defendant's Motion to Compel Arbitration [Doc. 14] is

**GRANTED** and the parties are **ORDERED** to resolve this matter according to their binding arbitration agreement. As there are no remaining claims before the Court, this matter is **DISMISSED WITH PREJUDICE**.

      **SO ORDERED.**

>*/s/ Charles E. Atchley, Jr.*
>**CHARLES E. ATCHLEY, JR.**
>**UNITED STATES DISTRICT JUDGE**